UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIONTE COLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   20-cv-2182-CKK |
| | ) |
| KARL RACINE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS KARL RACINE, MURIEL BOWSER, PETER NEWSHAM, CHRISTOPHER GELDART, LAQUANDRA NESBITT, AND WAYNE TURNAGE'S REPLY TO PLAINTIFF DIONTE COLEY'S OPPOSITION TO THEIR MOTION TO DISMISS**

Defendants Attorney General Karl Racine, Mayor Muriel Bowser, Chief of Metropolitan Police Department Peter Newsham, Acting Director of the Department of Public Works Christopher Geldart, Director of the Department of Health Laquandra Nesbitt, and Deputy Mayor for the District of Columbia Health and Human Services Wayne Turnage (Defendants) reply to Plaintiff Dionte Coley's Opposition to their Motion to Dismiss [10].

**INTRODUCTION**

Plaintiff Dionte Coley has failed to make a showing that dismissal is not warranted in favor of Defendants. Indeed, Coley has not raised a viable constitutional or common law claim against these Defendants in their official or individual capacities, and these Defendants are entitled to qualified immunity. In fact, each claim as pleaded by Coley against these Defendants fails as a matter of law. Thus, the Court should grant these Defendants' motion to dismiss.

1

# ARGUMENT

## I.     Coley's Fourteenth Amendment Claims Should Be Dismissed.

Coley's concession that the Fourteenth Amendment does not apply to these Defendants supports dismissal of the Fourteenth Amendment claims under Counts I and II.  *See* Opp'n at 10 n. 2.  Thus, Coley's Fourteenth Amendment claims should be dismissed with prejudice.

## II.    Coley Alleges No Fourth Amendment Violation by These Defendants and the Alleged Taking was not "Per Se Unreasonable."

Coley's Fourth Amendment claims, as alleged, are not viable as a matter of law against these Defendants.  Coley seeks to hold these Defendants liable for the claimed unconstitutional misconduct of District employees, as he has made no showing of any constitutional misconduct committed by these Defendants.  *See* Compl.  Indeed, Coley does not allege that these Defendants destroyed his unattended property or encouraged the District employees who took his property to ignore Coley's constitutional rights by taking his unattended property.  *Id.*  That said, these Defendants cannot be held liable for an employee's actions; there must be allegations showing that they, themselves violated Coley's Fourth Amendment rights.  *See City of Canton v. Harris,* 489 U.S. 378, 387 (1989); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (doctrine of respondeat superior does not apply under § 1983, so it is not enough that the municipality employs a tortfeasor).

Moreover, Coley has not shown that his rights under the Fourth Amendment have been violated.  In his Opposition, Coley claims his bag was not left unattended but acknowledges that he stepped away from it.  Opp'n at 11 (citing ¶ 77, "[h]e moved a few steps away from the tent and his bag. . . ."). Coley confuses "unattended" with "abandoned," as there is no doubt he stepped away from his bag before the officers arrived, and these Defendants do not contend he "abandoned" the bag.  As Coley appears to concede, his failure to remain with his backpack may

have minimized his Fourth Amendment rights against seizure of it in a public space. *See* Opp'n at 15. Indeed, there would be no need to "reclaim his backpack," had he not left it unattended. *See* Opp'n at 12. And as an alternative argument, Coley argues that the destruction of his bag was per se unreasonable and therefore violated his Fourth Amendment rights. *Id.* at 15. That argument also fails.

The parties agree that a seizure under the community caretaker exception must still be reasonable. *See* Opp'n at 13. The parties diverge, however, where Coley asserts that the seizure of his bag was unreasonable *merely* because the actions by District employees did not follow standardized procedures. Yet, Coley describes emergency circumstances of a city descending into chaos. *See* Compl. The Fourth Amendment accounts for quickly unfolding circumstances. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[r]easonableness … must be judged from perspective of reasonable officer on the scene, and the calculus of reasonableness must allow for fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain and rapidly evolving…."). The Fourth Amendment's reasonableness calculation also accounts for the legitimate governmental interests at stake to allow the government to react as needed to new and changing circumstances. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 289 (1984) (discussing assessment of legitimate governmental interests involved in seizure).

Coley's statement that these "Defendants do not seriously identify the District's interest in seizing Mr. Coley's bag. . . ." is unfounded given that he alleges that these actions were made to "send a clear message to BLM protestors, 'you will not create an autonomous zone in the District'" and where he describes the dangerous conditions and public nuisances present in the area. *See* Opp'n at 7–8 (citing Compl. ¶¶ 30 and 35), 15 (citing Compl. ¶ 48), and 24 (citing

3

Compl. ¶¶ 30, 32, and 42–44).  The District could not let its sovereignty devolve to the point that part of the city was claimed as an autonomous zone.  And while Coley claims a reasonable inference is that the health and safety concerns were mere pretext, his Complaint allegations describe health and safety concerns in great detail.  *See* Compl. ¶¶ 29, 45–46, 53–54.  There is no authority for the proposition that where the government protects public health and safety some alleged underlying, subjective motive negates that rationale for purposes of a Fourth Amendment analysis.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (describing objective nature of Fourth Amendment inquiry).  This case does not implicate the same "fundamental freedoms" implicated from World War II relocation-camp cases, the Red scare, or McCarthy-era internal subversion cases as described in the dissent Coley quotes in his Opposition.  *See* Opp'n at 15 (quoting *Skinner v. Ry. Labor Execs*., 489 U.S. 602, 635 (1989) (Marshall, J., dissenting)).  Here, the alleged taking of Coley's unattended property is outweighed by the need to maintain the city's sovereignty as alleged by Coley.  And the destruction of that property does not by itself make the seizure unreasonable.

Coley's reliance on *Lavan v. City of L.A*., 693 F.3d 1022, 1030 (9th Cir. 2012), for the proposition that the destruction of the property by itself makes it unreasonable, is misplaced.  *First*, *Lavan* is not binding on this Court.  *Second*, the Ninth Circuit considered the reasonableness of the seizure and found that the destruction of the property posed a more serious threat to people's right to be secure in their effects.  *Third*, it did not create a *per se* rule that destruction of property makes the seizure itself unreasonable.  *Id*. at 1030–31.  Indeed, while destruction of property may increase the severity of an infringement, the seizure itself is not unreasonable simply because the property is later destroyed.  *See Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012) (describing that failure to return items reasonably seized does not, by itself,

state separate Fourth Amendment claim, and Constitutional relief afforded in such circumstances is more appropriately considered under procedural due process). And here, as alleged by Coley, the government faced competing interests related to the abatement of public nuisances, ensuring that no autonomous zone was created, seizing unattended property, and protecting health and safety. Thus, the circumstances of this case do not support a finding of unreasonableness under the Fourth Amendment.

### III. Coley's Fifth Amendment Claims Fails Against These Defendants.

Coley's Fifth Amendment procedural due process claims fail against these Defendants because he has not shown that these Defendants took actions that deprived him of due process or that his due process rights were violated. Again, Coley seeks to hold these Defendants liable for actions allegedly taken by District employees, and he cannot do so. See Compl. *See also City of Canton*, 489 U.S. at 387; *Monell*, 436 U.S. at 691. Without a showing that these Defendants took actions that deprived Coley of his due process rights, the claim fails. *Id.*

Nor has Coley shown that the Defendants violated his due process rights under the Fifth Amendment. *First*, Coley's attempt to conjure a Fifth Amendment claim by asserting that the District's decisionmakers had subjective motivations outside of protecting public health and safety fails to support a due process claim against them. Just as personal, subjective motivations are irrelevant for the Fourth Amendment analysis, so too are such motivations irrelevant for the Fifth Amendment analysis. *See Howard v. Grinage*, 82 F.3d 1343, 1352 (6th Cir. 1996) (describing proper inquiry for procedural due process claims as not whether there was "personal animosity, ulterior motives, unspoken reasons, or face-to-face contact," as official's subjective motivation is irrelevant).

*Second*, the risk of erroneous deprivation was low because, as Coley alleges, there was an adjacent clearing that ended only 2 hours earlier and DC officials had been in the area talking with people about the clearing. Anyone with property they did not want to lose in that timeframe, especially in an area already subject to clearing, would not be expected to leave their property unattended and would keep those items with them when officers arrived. And Coley's own argument about what action MPD officers should have taken on the scene reveals why the Fifth Amendment does not apply here against these Defendants. *See* Pl.'s Opp'n at 18. The District's decisionmakers could not be expected to set out a comprehensive plan for all events that could arise and could not foresee that someone who wanted their bag containing valuable would leave it unattended. *See International Action Center v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004) (holding that trial court erred in denying qualified immunity to police supervisors based on claim of inaction based on claim for injuries allegedly sustained by protestors during Presidential Inaugural Parade). The decision by any particular officer on the scene who spoke with Coley—which ranges from telling Coley that the officer would protect Coley if he retrieved the backpack to ignoring Coley or telling him to forget the bag, *see* Compl. ¶¶ 81–83—cannot be imputed to these Defendants. *See id.*

*Third*, Coley misapprehends these Defendants' contention about notice by merely claiming he lacked actual notice. Defendants do not claim Coley, specifically, received actual notice. But the Fifth Amendment does not require actual notice. Rather, Fifth Amendment procedural due process claims require analysis of whether the government's action was reasonably calculated to provide notice under the totality of the circumstances. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Here, that standard is met. Coley alleges that another protest in the area was being cleared as late as 1:15 p.m. Compl. ¶ 63. An "interagency team [was in the area]

to talk with the people staying on H Street and, eventually, to remove the tents." *Id.* ¶ 53.  An adjacent clearing was allegedly conducted that morning. *Id*. ¶¶ 52, 58, 63.  Coley spoke with someone in that area who explained that the police had used pepper spray on some protestors and that he was sitting in a tent on public space. *Id.* ¶ 76.  These actions and events provided sufficient notice.

*Fourth*, Coley's claim that it was not impractical to undertake a predeprivation process is belied by his own description of the transpiring events.  That Coley allegedly spoke with officers on the scene defeats his argument that a predeprivation process did not exist.

*Finally*, contrary to Coley's arguments, the post deprivation remedies available to him in state court are sufficient for procedural due process.  Coley's effort to distinguish *S. Commons Condo. Ass'n v. City of Springfield*, 967 F. Supp. 2d 457, 460 (D. Mass. 2013), falls short.  As that Court recognized, "the Constitution's due process clause does not require a predeprivation hearing in *all* cases." *Id.* (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)) (emphasis added).  And "[w]here the loss of a property interest occurs, not by operation of an established state procedure, but by the error of the state actor, the absence of a predeprivation hearing alone cannot constitute a due process violation." *Id.* at 464.  Where "deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action," no predeprivation hearing is required. *Id.* at 467.  The decisions in *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), and *Logan*, 455 U.S. at 433, further show that the state tort remedy available to Coley is sufficient.  In *Parratt*, the state tort remedy provided a sufficient post-deprivation process for the challenge of an alleged tortious loss of property caused by a state employee rather than an established state procedure. *Parratt*, 451 U.S. at 541.  The Supreme Court stressed the legitimacy of state action without a prior hearing where there is a

"necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process. . . ." *Id*. at 539.  Because the plaintiff sought relief for a tortious loss and the state provided a remedy for the claimed tortious loss, the post deprivation process was sufficient under the circumstances of that case.

In *Logan*, the appellant claimed the Illinois Fair Employment Practices Commission (the Commission) violated his federal due process rights by dismissing his charge against his former employer for unlawful termination based on disability.  *Logan*, 455 U.S. at 426.  The case was dismissed because the Commission inadvertently scheduled a mandatory conference for five days after the expiration of the statutory period.  *Id*.  The United States Supreme Court found the available state tort action insufficient as a post deprivation remedy because Logan challenged "the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference. . . ." *Id.* at 436.  The nature of the challenge was therefore not the Commission's error but the "established state procedure." *Id*.  The tort action was also insufficient because it could not award the relief sought in the charge: reinstatement by his employer and vindication of his right to be free from discriminatory treatment.  *Id.* at 436–37.

Here, as in *Parratt* and unlike in *Logan*, Coley seeks relief for a tortious loss of his unattended bag.  While he claims to have lost "photos, videos, and memories [that] can never be recovered," those losses are exactly the kind of property that state tort actions are designed to remedy.  Coley has not plead the kind of unavailable relief considered in *Logan* like reinstatement to employment by a non-party.  Further, Coley challenges one-time actions he claims caused him to lose his property.  Thus, the availability of a state remedy requires

dismissal of Coley's Fifth Amendment due process claim. And more importantly, there is no showing that any of these Defendants *caused* the constitutional violation.

## IV.   Qualified Immunity Shields These Defendants from Liability for the Individual Capacity Claims.

In opposing these Defendants' motion, Coley has not shown that they can be held constitutionally liable for the alleged seizure and destruction of his unattended property. *See* Pl.'s Opp'n. Qualified immunity should be resolved at the earliest stage of litigation. Indeed, it protects "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See International Action Center*, 365 F.3d at 24 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Coley seeks to hold these Defendants personally liable for the District employee(s)' decision to seize his unattended bag and destroy it. To tie these Defendants to this claimed unconstitutional conduct, Coley alleges that "[o]n or about June 22nd or 23rd, Mayor Bowser convened a meeting with her top administration officials to determine the appropriate steps to resolve the BHAZ situation and appease the White House. The agreed upon action was to remove all protestors and send a message that an autonomous zone would not be tolerated in Black Lives Matter Plaza." Compl. ¶ 48. And the named Defendants were in attendance and "offered their views on the best ways to respond to Presidential pressure and their respective agencies took action over the next few days." *Id.* at ¶ 49. Coley alleges that as a result of the meeting, MPD "took coordinated actions … to remove protestors and individuals in that location and deprive them of their belongings. . . . DPW [employees] were responsible for the removal and disposal of protestor's property." *Id*. at ¶ 51. The "decision was made to declare the area an 'encampment.'" *Id.* at ¶ 53. As is made clear by Coley's allegations, he wants to hold these Defendants liable for allegedly participating in meetings designed to make plans to keep citizens

safe, to squelch public unrest, and stop the vandalism of property in the city.  *See* Compl.  Coley does not tie any particular decision to any specific Defendant.  *Id.*  Nowhere in the Complaint does Coley allege what specifically Attorney General Racine did that violated his rights; what Mayor Bowser did that violates his rights; or what decisions Chief Newsham, Acting Director of the Department of Public Works Geldart, Director of the Department of Health Nesbitt, or Deputy Mayor for the District of Columbia Health and Human Services Turnage made or agreed on that violated his constitutional rights.  *Id.*  The law does not allow Coley to hold these Defendants globally liable simply for attending or participating in the alleged planning meeting.

      Certainly, attending meetings to brainstorm about what actions to take in the face of the events as described by Coley that unfolded in the District cannot be the basis of a viable constitutional claim against these Defendants.  There is no established law for how local officials should respond to threats that the city's police department may be overtaken or how it is to respond to the use force upon the city's residents and visitors by federal actors.  There is also no established law about how a city struggling to maintain sovereignty at a time when protestors set a church ablaze, vandalized property, and are trying to set up an autonomous zone in the city must respond.  As alleged by Coley, there were protests, fires, spray painting and violent interactions near the area where his property was seized.  *See* Opp'n at 24 (citing Compl. ¶¶ 30, 32, 42, and 44).  As alleged in Coley's Complaint, the decisions these Defendants supposedly made were designed to address an unforeseeable and novel set of circumstances.  And Coley identifies no case law addressing facts remotely similar to the circumstances of this case to show that these Defendants knew or should have known that their conduct would violate his constitutional rights because the law governing their conduct was "clearly established" at the time of the incident.  *See Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 171 (D.D.C. 2018) (quoting

*Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 100 (D.D.C. 2011)).  Indeed, Coley does not show that any of these Defendant had notice that their decisions inflicted constitutional injury yet did nothing in the face of this knowledge.  *See* Compl.

Rather than show why each named Defendant is not entitled to qualified immunity, Coley simply argues that "[a] reasonable objective government official would have known a warrantless seizure and destruction of property, combined with a lack of notice and predeprivation hearing would violate the Fourth and Fifth Amendment because that responding to a political crisis brought upon by the Trump Administration's threatened and lawful exercise of the Home Rule Act could not be the basis for an emergency encampment clearing."  Opp'n at 24.  And Coley's reliance on the Court's decision to deny qualified immunity in *Bloem v. Unknown Dep't. of the Interior Employees*, 920 F.Supp.2d 154 (D.D.C. 2013), is misplaced.  Unlike the *Bloem* plaintiff who sued defendants who took part in seizing his property, Coley named District officials who did not see him before or during the alleged seizure, did not personally take his property from him, and did not personally destroy it.  *See* Compl.  In denying the *Bloem* defendants qualified immunity, the *Bloem* court ruled that "to the extent Defendants rely … on a mistake-of-fact defense…their effort is premature" because "the Court is obligated to accept all facts well pleaded in the complaint…."  Here, the only facts alleged against these Defendants are that they participated in a planning meeting to decide how to address the state of the existing emergency in the District, and that they developed a plan to achieve that purpose.  Compl.

The level of specificity of the alleged constitutional violation is imperative.  *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012), for proposition that officers are entitled to qualified immunity under 42 U.S.C. § 1983 unless the unlawfulness of their conduct was clearly established at the time).  On these facts, qualified immunity protects these Defendants for meeting to discuss plans to address the unfolding public emergency in the city and for any plans developed at that meeting, although Coley's allegations are conclusory about the alleged plans developed.  *See* Compl.  Indeed, even if these Defendants were mistaken in the plans allegedly developed at that meeting, no reasonable official would have known that the decisions made at the meeting as alleged by Coley would violate Coley's rights.  Thus, even if Coley suffered underlying Constitutional violations as alleged, qualified immunity shields each of these Defendants from liability.

## V.      Coley's Official Capacity Claims Against These Defendants Should not be Allowed.

Coley did not name the District as a party here, but he must still look to the District for the relief he seeks against these Defendants.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (when sued in an official capacity, the government official is not personally liable for damages); *Will v. United States*, 491 U.S. 58, 71 (1989) ("[S]uit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citing *Brandon v. Holt*, 468 U.S. 464 (1985)).  Although some courts have allowed official capacity suits to remain against officials when the District is not a party, the plaintiff is still required to plead facts showing liability sufficient to hold the District liable as the real party in interest.  Coley has not done so.  *See* Compl.  Indeed, *respondeat superior* is not available under 42 U.S.C. § 1983, and Coley does not plead facts supporting municipal liability against these Defendants.  *See id.  See also Monell*, 436 U.S. at 691.  Given that Coley failed to allege facts to

support municipal liability against the District—or against these Defendants—dismissal of this official-capacity lawsuit is appropriate.

## VI.     Coley's Common Law Claims Warrant Dismissal.

Coley's common law claims fail against these Defendants because he has identified no facts showing any direct involvement of these Defendants in the claimed misconduct. *See* Compl. Coley does not challenge that these Defendants were not present when his bag was seized or destroyed. *See* Opp'n, generally. Nor is there any showing that Coley met any of these Defendants on the day of the alleged events or that these Defendants knew Coley would be present at the incident location. *Id.* And Coley's reliance on *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37 (D.D.C. 2019); *Howard Univ. v. Best*, 484 A. 2d 958 (D.C. 1984); *Edmonds v. United States*, 563 F. Supp. 2d 196 (D.D.C. 2008); *Waldon v. Covington*, 415 A.2d 1070 (D.C. 1980); and *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), is misplaced. In each of these cases, the defendants had personal involvement with the plaintiff. For example, in *Kurd*, the Court did not dismiss the action because the plaintiff plead sufficient facts showing the defendants' personal involvement at the scene in the asserted claims. *See Kurd*, 374 F. Supp. 3d at 55 ("Plaintiffs have alleged specific facts against each Defendant to satisfy the requirement of intentional conduct. Plaintiffs allege that each of the three Defendants 'pushed past the police and physically attacked the Protestors' during the first attack."). In *Best*, 484 A.2d at 985, Defendant Hill allegedly "prevented [the plaintiff] from attending workshops, recalled administrative proposals she had submitted to the Board of Trustees, and dismissed faculty members without consulting her. . . ."). In *Edmonds*, 563 F. Supp. 2d at 198, "FBI employees escorted [the plaintiff] from the building and did not permit her to retrieve personal items from her desk. . . ." In *Walton*, the named defendants had personal involvement with the plaintiff. *See*

*Walton*, 415 A.2d 1072–1073.  And in *Halberstam*, the plaintiff alleged that the defendant conspired with her husband's killer.  The defendant failed to answer the Complaint, and a default was entered against her.  Trial proceeded, and the jury found the defendant liable as a joint venturer and co-conspirator in the death of the plaintiff's husband; she appealed.  The appellate court affirmed the jury's verdict determining that over the course of five years, the appellant and her co-conspirator burglarized the community, amassed a fortune, and that her actions were responsible for the decedent's death.

      Unlike in each of those cases, Coley has not shown any personal involvement of any of these Defendants for the asserted claims.  He does not allege that any of these Defendants personally seized his property, destroyed his property, or pled any non-conclusory facts showing that they had conversations with the District employees who allegedly seized and destroyed his property.  *See* Compl.  *See also* Opp'n.  Without personal involvement, these Defendants cannot be held personally liable for the asserted common law claims.  This Court should follow the holding in *Morton v. District of Columbia Hous. Auth.*, 720 F. Supp. 2d 1, 9 (D.D.C. 2010).  In *Morton*, the plaintiff sued the D.C. Housing Authority, its Executive Director, and another employee.  The trial court dismissed Morton's intentional infliction of emotional distress (IIED) claim against the Executive Director because she pled the elements of IIED as to each defendant generally without alleging specific facts to show the Executive Director himself "engaged in conduct of sufficient enormity to imply recklessness or intent."  *Id.* at 9.

In an effort to bolster his claims, Coley argues that "Defendants ordered MPD officers not to listen or engage with the public during the encampment removal operation." *See* Opp'n at 27. This allegation is not in the Complaint, and consideration of a motion to dismiss is limited to the four corners of the complaint. *See Ralls Corp. v. Comm. On Foreign Inv. In U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). And this Court should not accept a plaintiff's conclusory allegations even when included in the Complaint. On this record, dismissal of Coley's common law claims against these Defendants is appropriate.

Dated: October 8, 2020            Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division


*/s/ Patricia A. Oxendine*_____
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I


*/s/ Charles J. Coughlin*_____
CHARLES J. COUGHLIN
D.C. Bar No. 1016993
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 724-6608 (direct); (202) 727-6295 (main)
(202) 730-1887 (fax)
charles.coughlin@dc.gov
*Counsel for Defendants Attorney General Karl Racine, Mayor Muriel Bowser, Chief of Metropolitan Police Department Peter Newsham, Acting Director of the Department of Public Works Christopher Geldart, Director of the Department of Health Laquandra Nesbitt, and Deputy Mayor for the District of Columbia Health and Human Services Wayne Turnage*